UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Stacy O. Johnson,

Plaintiff,

vs.

Michigan Claim Service,
Inc.,

Defendant.          Civ. No. 05-2909 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Michigan Claim Service, Inc. ("MCS"), for Summary Judgment, as well as the Motion of the Plaintiff Stacy O. Johnson ("Johnson") for Partial Summary Judgment on the liability issue. A Hearing on the Motions was conducted on November 1, 2006, at which time, the Plaintiff appeared by Christopher P. Rosengren, Esq., and the Defendant appeared by Jeremy

D. Sosna, and Elizabeth A. Grande, Esqs.  For reasons which follow, we recommend that both Motions be denied.

## II. <u>Factual and Procedural Background</u>

This action arises from Johnson's allegation that MCS terminated his employment, in violation of the Uniformed Services Employment and Reemployment Rights Act, Title 38 U.S.C. §4828, <u>et seq.</u> ("USERRA").  See, <u>Complaint</u>, <u>Docket No. 1</u>.  Specifically, Johnson contends that MCS failed to retain him for a period of one (1) year, following his return from a military deployment of more than one hundred and eighty (180) days.  <u>Id.</u> at page 2, ¶3.  In response, MCS alleges that it had just cause for terminating Johnson's employment, as he refused to comply with a company policy, that was instituted after his return, and that required key management members, and sales staff, to execute a non-compete and  confidentiality agreement (the "Agreement"), as a condition of continued employment.   See, <u>Defendant's Memorandum of Law</u>, <u>Docket No. 21-1</u>, at 1.

At the time that Johnson began working for MCS in 2002, he was a Captain in the Minnesota Army Reserves.  See, <u>Complaint</u>, at page 2, ¶¶5-6.  He was mobilized for Active Duty in Iraq, on March 15, 2003, where he remained until his deactivation on June 12, 2004.  <u>Id.</u> at ¶¶8-9; see also, <u>Deposition of Stacy Johnson ("Johnson</u>

Dep."), <u>Docket No. 29</u>, <u>Exhibit 1</u>, at p. 13.  On May 11, 2004, Johnson filed a request, under USERRA, for reemployment with MCS, and he returned to work on August 2, 2004, in the same position as he held prior to his activation, and with the same pay. <u>Id.</u> at ¶¶10-11.  In January of 2005, MCS presented the Agreement to over thirty-three (33) staff members, including Johnson, and informed them that, if they failed to sign the Agreement, they would be terminated.  See, <u>Defendant's Motion in Support</u>, <u>Docket No. 21</u>, at 8-11.  Johnson refused to sign the Agreement unless he were given "additional severance pay or compensation," <u>id.</u> at 10, and, on January 11, 2005, his employment with MCS was terminated, along with that of several other non-military MCS staff members, who had also refused to sign the Agreement.  See, <u>Complaint</u>, at page 2, ¶12.

Johnson filed his Complaint on December 15, 2005.  See, <u>Complaint</u>, <u>Docket No. 1</u>.  On September 8, 2006, MCS moved for Summary Judgment,  see <u>Docket No. 19</u>, and on the same day, Johnson filed his Cross-Motion for Partial Summary Judgment on the issue of liability, see, <u>Docket No. 25</u>.

### III.  <u>Discussion</u>

A.   <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474

(8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber

and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

　　　　B.　　Legal Analysis.　At issue in the parties' respective dispositive Motions

is the applicability of Title 38 U.S.C. §4316(c) to the facts presented.[1]　Section

4316(c) temporarily alters the at-will status of employees, who return from military

service, by providing as follows:

> A person who is reemployed by an employer under this
> chapter shall not be discharged from such employment,
> except for cause * * * within one year after the date of such
> reemployment, if the person's period of service before the
> reemployment was more than 180 days.

Title 38 U.S.C. §4316(c); see, Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299,
308 (4th Cir. 2006).[2]

---

[1]In his Complaint, Johnson alleges that his "military service was, in whole or in part, a motivating factor for his termination." Complaint, at page 2, ¶14.　As pertinent, Title 38 U.S.C. §4311 protects service members from discrimination, upon a showing that the service member's military service was a "motivating factor" for some discriminatory employment action.　However, in his Response Memorandum, Docket No. 39, at pp. 3-5, and at the Hearing, Johnson clarified that he is alleging only that MCS violated Section 4316(c), and that he is not bringing a Section 4311 claim. Accordingly, Johnson is no longer claiming that his military service was a "motivating factor" in MCS's termination of his employment and, to the extent that his Complaint may be read to allege a claim under Section 4311, that claim should be dismissed.

[2]In order to be protected under Section 4316(c), Johnson must show that he is qualified under Section 4312, which provides as follows:

(continued...)

The employer bears the burden of proving that it was reasonable to discharge the

USERRA-covered employee for his conduct, and that the employee had express or

implied notice that the conduct would constitute cause for discharge.  Id., citing 20

---

[2](...continued)

      (a)     Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if –

           (1)     the person * * * has given advance written or verbal notice of such service to such person's employer;

           (2)     the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

           (3)     except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e) * * *

Title 38 U.S.C. §4312(a); see, Duarte v. Agilent Techs., Inc., 366 F. Supp. 2d 1039, 1046 (D. Colo. 2005).

Both parties accept that Johnson has satisfied this burden, and that he is qualified under Section 4312(a), see, Answer, Docket No. 5, and therefore, we do not further address that threshold question.

- 7 -

C.F.R. §1002.248(a);[3] <u>Hillman v. Arkansas Highway & Transportation Dept.</u>, 39 F.3d

197, 200 (8th Cir. 1994)("The reasonableness of the discharge is determined by asking

whether it was fair to discharge the veteran because of his conduct and whether the

veteran had notice, express or fairly implied, that such conduct would be grounds for

---

[3]Section 1002.248 provides as follows:

> The employee may be discharged for cause based either on conduct or, in some circumstances, because of the application of other legitimate nondiscriminatory reasons.
>
> (a)    In a discharge action based on conduct, the employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge.
>
> (b)    If, based on the application of other legitimate nondiscriminatory reasons, the employee's job position is eliminated, or the employee is placed on layoff status, either of these situations would constitute cause for purposes of USERRA.  The employer bears the burden of proving that the employee's job would have been eliminated or that he or she would have been laid off.

70 <u>Federal Register</u> 75246, 75309 (December 19, 2005).

Although this Section did not become effective until January 18, 2006, after Johnson's claim accrued, its contents generally summarize the cases on point. <u>Id.</u> at 75246. We do not cite the Section as the applicable law, but as illustrative of the general rule of law as gleaned from a host of cases addressing the meaning of "cause," as the term is employed in USERRA.

discharge."), citing <u>Carter v. United States</u>, 407 F.2d 1238, 1244-45 (D.C. Cir. 1968); see also, <u>Jordan v. Jones</u>, 84 F.3d 729, 732 (5th Cir. 1996), cert. denied <u>sub nom.</u> <u>Jordan v. Valdez</u>, 519 U.S. 976 (1996).

"Cause" is not defined in USERRA, but "is to be liberally construed and strictly enforced for the benefit of those who left private life to serve their country."  <u>Ortiz Molina v. Rimco, Inc.</u>, 2006 WL 2639297 at *7 (D. Puerto Rico, September 13, 2006), citing <u>Alabama Power Co. v. Davis</u>, 431 U.S. 581, 584-85 (1977), and <u>Duarte v. Agilent Techs., Inc.</u>, 366 F. Supp. 2d 1039, 1046 (D. Colo. 2005); see <u>Warren v. Int'l Business Machines Corp.</u>, 358 F. Supp. 2d 301, 313-14 (S.D.N.Y. 2005)("Like the legislation that preceded it, USERRA should be liberally construed for the benefit of those who serve their country."), citing <u>McGuire v. United Parcel Service</u>, 152 F.3d 673, 676 (7th Cir. 1998), and <u>Fishgold v. Sullivan Drydock & Repair Corp.</u>, 328 U.S. 275 (1946).

Here, the parties do not dispute that Johnson was given express notice, that he would be discharged if he failed to sign the Agreement, and that his employment was terminated, along with at least two (2) other employees who had failed to sign the Agreement, for that very reason.  See, <u>Defendant's Memorandum in Support</u>, supra at 1, 8-9; <u>Plaintiff's Response Memorandum</u>, supra at 6; <u>Plaintiff's Memorandum in</u>

Support, Docket No. 26, at 3.  Therefore, the only issue presented is whether there is a genuine factual dispute, that should be resolved by a Jury, concerning the reasonableness of MCS's decision to terminate Johnson.   See, Defendant's Memorandum in Support, supra at 15; Plaintiff's Response Memorandum, at 5.

In support of its Motion, MCS argues that it terminated Johnson "for cause," as required by Section 4316(c), because its requirement, that Johnson sign the Agreement, was reasonable.  According to MCS, in January of 2005, it was driven, by "serious financial hardships * * * in the previous twelve months," to institute a global policy mandating key management and sales employees to sign the Agreement.  See, Defendant's Reply, Docket No. 43-1, at 4.  Since customer relations were critical to MCS's financial health, MCS claims that it decided to initiate the Agreement in order "to protect * * * customer relationships," and "not allow someone like Mr. Johnson to leave the company * * * and take that customer relationship with [him]." Deposition of Tara O'Connor -LaRose ("LaRose Dep."), supra at 27.

In urging that corporate exigency was the justification for imposing the Agreement upon certain of its employees, MCS has submitted deposition testimony of several officers, and employees, which attest to the fact that, in the years leading

up to January of 2005, MCS had laid off over 200 employees.[4]  See, <u>Defendant's</u>

<u>Memorandum in Support</u>, <u>Docket No. 21</u>, at 5; <u>LaRose Dep.</u>, <u>Docket No. 22-D</u>, at 31-

32.  The parties agree that the number of workers, who were laid off, included (3) of

the five (5) Sales Representatives who were in the division where Johnson worked.

See, <u>Johnson Dep.</u>, <u>Docket No. 22-B</u>, at 115; <u>Defendant's Memorandum in Support</u>,

<u>Docket No. 21</u>, at 5.  Given this evidence, which is not substantively controverted, we

can accept that MCS was undergoing a restructuring in the period prior to its

termination of Johnson's employment, but that acceptance does not commend

Summary Judgment in MCS's favor.

There is support, of course, for the general proposition that, when an employer

has demonstrated a genuine financial need, which prompts a reduction-in-force, the

termination of an USERRA-protected employee can be "for cause."  See, <u>Ferguson</u>

<u>v. Walker</u>, 397 F. Supp. 2d 964, 974 (C.D. Ill. 2005)(discharge of police officer due

to "budgetary concerns" of employing village was "for cause"); <u>Michell v.</u>

---

[4]At the Hearing, MCS represented that it had employed four hundred (400), to four hundred and fifty (450) employees, prior to the onset of layoffs, but there is nothing of Record which attests to that fact.  Rather, the evidence on the subject is conclusory in tone and content.  See, <u>LaRose Dep.</u>, <u>Docket No. 22-D</u> at 18 and 32 ("I do recall that as there was a number of layoffs occurring * * *."), and ("In 2005 * * * a significant portion of people had left the company.").

Continental Loss Adjusting Servs., Inc., 1994 WL 761962 at *7 (S.D. Ala., May 25, 1994)(granting Summary Judgment to employer on showing of financial necessity); Ruesterholtz v. Titeflex, Inc., 166 F.2d 335, 336 (3d Cir. 1948)(argument that adverse economic conditions do not constitute cause rejected as being without merit); Kent v. Todd Houston Shipbuilding Corp., 72 F. Supp. 506, 509 (D. Tex. 1947)(employer not required to do anything to have enough work to continue to employ plaintiff); Maloney v. Chicago, B&Q. R. Co., 72 F. Supp. 124, 125-26 (D.C. Mo. 1947)("There was no controversy but that the defendant was justified because of economic conditions in thus reducing its force at the yards mentioned.").

Accordingly, while Courts have been sympathetic to employers who are in genuine financial peril, notwithstanding the protections of USERRA, the simple fact is that Johnson's employment was not terminated by a reduction-in-force -- he had survived the prior layoffs.[5]   The issue, instead, resolves to whether MCS was reasonable in demanding Johnson, and others who were not protected by USERRA,

---

[5]In fact, whatever may have been the economic circumstance, prior to Johnson's return from Iraq, there is testimony from a ranking corporate officer that, as of the time that the Agreement was issued, the company, or at least the division in which Johnson was employed, "was growing, it had grown for several years, and was continuing to be successful." Deposition of Bruce Stubbs, Docket No. 22, Exhibit 3, at p. 30 of 30.

to forfeit his future employment, either as an independent contractor, or as an employee of a competitor of MCS, for a period of one (1) year, in the very States in which Johnson had previously worked, without the exchange of any compensation for the forfeiture.[6]

MCS has presented evidence that the Agreement was perceived by its Board of Directors as important to its corporate interests, but they have not provided any evidence to support the reasonableness of extracting such an agreement, from Johnson, without consideration. Indeed, in sworn Answers to Interrogatories, Johnson avers that two other employees -- John Bradley and Brian Steley -- were "offered money to sign the non-compete agreement," an attestation which, while oblique, has not been controverted. Docket No. 22, Exhibit 2, at p. 4. Moreover, there are conflict of law issues, which attend to the reasonableness of MCS's demand for a

---

[6]MCS can take small comfort from the fact that two (2) employees, who were not protected by USERRA, were also terminated, with Johnson, for failing to accept the Agreement. As the Courts recognize, "Section 4316(c) temporarily changes the at-will employment status of returning veterans." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006). As to an at-will employee, "[a] private employer may have the right, in the absence of statute or contract to the contrary, to fire an employee for personal reasons, unrelated to job function, that appeal to the employer, the color of hair, a dislike of men who smoke, or have a tattoo, etc.," but "[t]hat does not mean that the employer can fire a returning veteran for the same reason as constituting 'cause.'" Carter v. United States, 407 F.2d 1238, 144 (D.C. Cir. 1968).

noncompetition agreement on penalty of an employment termination. The conflict has not been meaningfully addressed by either party, and stands as yet another impediment to Summary Judgment.

If, as MCS argued at the Hearing, Michigan law applies to the Agreement, then no consideration would appear to be necessary for, under the law of Michigan, "mere continuation of employment is sufficient consideration to support a noncompete agreement in an at-will employment setting." QIS, Inc. v. Industrial Quality Control, Inc., 686 N.W.2d 788, 789 (Mich. Ct. App. 2004), app. denied, 693 N.W.2d 814 (Mich. 2005), citing Robert Half, International, Inc. v. Van Steenis, 784 F. Supp. 1263, 1273 (E. D. Mich. 1991); see also, Lowry Computer Products, Inc. v. Head, 984 F. Supp. 1111, 1115 (E.D. Mich. 1997). However, a different result follows under Minnesota law where noncompete agreements are disfavored and, to be enforceable, "must be ancillary to the initial employment agreement or, if not ancillary to the initial agreement, supported by independent consideration." Hutchinson Technology Corp. v. Magnecomp Corp., 2006 WL 2061707 at *3 (D. Minn., July 17, 2006), citing National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982); Sandborn Mfg. Co. v. Currie, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993). As a consequence, Minnesota Courts have held that, while "the mere continuation of employment can be

used to uphold coercive agreements," the non-compete agreement "must be bargained for and provide the employee with real advantages." Freeman v. Duluth Clinic, Inc., 334 N.W.2d 626, 630 (Minn. 1983), citing Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 130-31 (Minn. 1980).

Unfortunately, both parties have ignored this issue as it has borne no briefing, and very little substantive argument. For its part, MCS has primarily relied on the fact that the Agreement included a choice of law provision which reflected that the "Agreement is governed by the law of the State of Michigan without regard to conflict of laws principles." Docket No. 22, Exhibit 2, at p. 18 of 43. However, Johnson did not sign the Agreement, and it is not apparent from this Record whether any written contract existed, between MCS and Johnson, to which Michigan law would apply. For his part, Johnson simply argues that Minnesota law should apply since the majority of the duties he performed occurred in Minnesota, although he offers no legal support for that proposition. See, Plaintiff's Memorandum in Support, Docket No. 26, at 9 n. 2. This unsettled, and unbriefed, issue of law could critically impact upon the issues presented, both here and at Trial.

Since MCS has not demonstrated, as a matter of law, that its termination of Johnson's employment was reasonable, MCS is not entitled to Summary Judgment.

As the Courts have recognized, "[b]ecause employers have the burden of proving that the discharge was reasonable, it is difficult for employers to achieve summary judgment on claims under §4316(c)." Francis v. Booz, Allen & Hamilton, Inc., supra at 308, citing Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1425 (11th Cir. 1990)("As is well established, in a summary judgment proceeding the party against whom the burden of proof falls at trial faces a challenge more difficult than otherwise."). Here, as to MCS's Motion, we find genuinely disputable issues of material fact, on the crucial question of "reasonableness," which precludes an award of Summary Judgment.[7]

As for Johnson's Partial Summary Judgment Motion, MCS's failure, on this Record, to demonstrate that its termination of Johnson was reasonable as a matter of law, does not absolve Johnson of his obligation to demonstrate that MCS's conduct was unreasonable as a matter of law. As was the case with MCS's conclusory averments, we are not persuaded by Johnson's conclusory testimony, unsupported by

---

[7]MCS has cited cases, in support of its contention, that "cause" can be found on circumstances that have "nothing to do with the employee's performance at work at all." Defendant's Reply in Support of Summary Judgment, Docket No. 43, at p. 3. We do not quarrel with that general proposition, but note that each of the cases cited in support of the question involved a Trial to the presiding Judge. Here, MCS has not presented such uncontested evidence as would show, as a matter of law, that its decision to terminate Johnson's employment was objectively reasonable.

- 16 -

other evidence, that the Agreement was "manufactured" "to get rid of [him]." Johnson Dep., supra at 85-87. We cannot say, on this abbreviated Record, that MCS's decision to implement the Agreement did not afford some consideration to Johnson, which a Jury could find was adequate, in exchange for its extraction of a noncompetition provision.[8]   In short, neither party has satisfied its burden of demonstrating that no genuine issues of material fact exist, and accordingly, Summary Judgment on both Motions should be denied.

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Defendants' Motion for Summary Judgment [Docket No. 19] be denied.

2.     That the Plaintiff's Motion for Partial Summary Judgment [Docket No. 25] be denied.

---

[8]MCS argued at the Hearing, with little evidentiary support, that it provided Johnson with consideration in the form of continued employment with the company, as well as in the opportunity to attend the annual company meeting in mid-January of 2005, so as to gain exposure to strategic initiatives, new products, and company marketing plans.  See, LaRose Dep., at 15, 29-31; Johnson Dep., at 162.  In the absence of competent evidence, we are unable to assess the legitimacy, let alone the adequacy, of such claimed consideration.

3.     That, to the extent that the Plaintiff's Complaint may be read to assert a claim under Title 38 U.S.C. §4311, the claim be dismissed as having been abandoned.


Dated:  December 1, 2006                    *s/Raymond L. Erickson*
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 18, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 18, 2006,** unless all interested

- 18 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.